STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorney
Deputy Chief, Environmental and Community Safety Crimes Section
HEATHER C. GORMAN (Cal. Bar No. 258920)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2484/0334
     Facsimile: (213) 894-0141
     E-mail:    dennis.mitchel@usdoj.gov
                heather.gorman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-200(A)-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT FOR DEFENDANT WAYNE ANTHONY MORAN |
| v. | |
| WAYNE ANTHONY MORAN, | Hearing Date: September 6, 2022 |
| Defendant. | Hearing Time: 10:00 a.m.<br>Location:    Courtroom of the<br>             Hon. Dolly M. Gee |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Dennis Mitchell and Heather C. Gorman, hereby files the Government's Sentencing Position and Objections to the Presentence Investigation Report for Defendant Wayne Anthony Moran.

This Government's Sentencing Position and Objections to the Presentence Investigation Report for Defendant Wayne Anthony Moran is

based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and such further evidence and argument as the Court may permit.

Dated: August 16, 2022

Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

    /s/
DENNIS MITCHELL
HEATHER C. GORMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                               PAGE

TABLE OF AUTHORITIES...................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.    INTRODUCTION......................................................1

II.   STATEMENT OF FACTS................................................2

III.  THE PRESENTENCE REPORT AND THE GOVERNMENT'S OBJECTIONS............3

      A.   Guidelines Calculation......................................3

           1.   The Presentence Report.................................4

           2.   The Government's Objection.............................4

      B.   Fine........................................................6

      C.   Factual Corrections.........................................7

IV.   GOVERNMENT'S POSITION REGARDING DEFENDANT'S COOPERATION...........7

V.    THE GOVERNMENT'S RECOMMENDATION...................................9

      A.   Analysis Under the Sentencing Guidelines....................9

      B.   Analysis Under 18 U.S.C. § 3553(a)..........................9

           1.   The Need for the Sentence to Reflect the
                Seriousness of the Offense, Promote Respect for
                the Law, Provide Just Punishment, and Provide
                General Deterrence Warrant a 24-month Term of
                Imprisonment..........................................10

           2.   The History and Characteristics of Defendant and
                the Need to Protect the Public from Further
                Crimes Warrant a 24-month Term of Imprisonment........11

VI.   CONCLUSION......................................................12

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                   PAGE

**CASES**

United States v. Booker,
    543 U.S. 220 (2005)...........................................9

United States v. Lance L. Gooberman,
    CR 20-125-JFW.................................................8

**STATUTES**

18 U.S.C. § 3553(a)........................................9, 10, 11

18 U.S.C. § 371...................................................1, 4

18 U.S.C. § 545...................................................4, 5

21 U.S.C. § 321(b)..................................................5

21 U.S.C. § 331.....................................................5

21 U.S.C. § 331(d)................................................1, 5

21 U.S.C. § 333(a)................................................1, 5

21 U.S.C. § 355(a)................................................1, 5

**OTHER AUTHORITIES**

U.S.S.G. § 2B1.1................................................4, 5, 6

U.S.S.G. § 2B1.5....................................................4

U.S.S.G. § 2N2.1.................................................5, 6

U.S.S.G. § 2Q2.1....................................................4

U.S.S.G. § 2T3.1..................................................4, 5

U.S.S.G. § 2X1.1....................................................4

U.S.S.G. § 3B1.1..................................................4, 5

U.S.S.G. § 3E1.1..................................................4, 5

U.S.S.G. § 5K1.1..................................................7, 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On June 15, 2018, defendant Wayne Anthony Moran ("defendant") pleaded guilty, pursuant to an Amended Plea Agreement filed the same day (the "Plea Agreement") to count one of the First Superseding Information (the "information") in United States v. Wayne Anthony Moran, CR 18-200(A)-DMG.  Count one of the information charged defendant with conspiracy to import goods, namely naltrexone pellets, into the United States, contrary to law, in violation of 18 U.S.C. § 371.  As discussed further below, the Food, Drug, and Cosmetic Act ("FDCA"), namely, 21 U.S.C. §§ 331(d), 355(a), and 333(a), prohibited the naltrexone pellets from being introduced into interstate or foreign commerce.  Consequently, the importation of the naltrexone pellets was contrary to the FDCA.

On August 2, 2022, the United States Probation and Pretrial Services Office (the "Probation Office") disclosed its Presentence Investigation Report ("PSR").  The Probation Office calculated defendant's total offense level as 12 and his criminal history category as I, resulting in a Guidelines range of 10 to 16 months of imprisonment.  The Probation Office also filed a letter recommending that defendant be sentenced to a 10-month term of imprisonment followed by a two-year term of supervised release.

For the reasons set forth below and consistent with the Plea Agreement, the government objects to the Probation Office's Guidelines calculation and recommends that the Court sentence defendant to a 24-month term of imprisonment followed by a two-year period of supervised release.

**II.   STATEMENT OF FACTS**

For many years, continuing to at least April 2018, defendant was a medical doctor in Hong Kong who, among other things, obtained implantable naltrexone pellets from the United States and elsewhere, stored naltrexone pellets in Hong Kong, and caused the naltrexone pellets to be imported and brought to the United States. (Plea Agreement ¶ 13; PSR ¶ 17.)  A naltrexone pellet was a drug used to treat opioid addiction.  (Plea Agreement ¶ 13; PSR ¶ 18.)  At all times relevant to the information, the naltrexone pellet sold and imported into the United States by defendant constituted a new drug under the FDCA.  (Id.)  The United States Food and Drug Administration ("FDA") has never approved a New Drug Application or an Abbreviated New Drug Application for the naltrexone pellet; accordingly, at all times, the naltrexone pellet also constituted an unapproved new drug under the FDCA.  Accordingly, at all times relevant to the information, the FDCA prohibited the introduction into interstate commerce of the naltrexone pellets.  21 U.S.C. §§ 331(d), 355(a), and 333(a).  Interstate commerce included "commerce between any State or Territory and any place outside thereof"; accordingly, the FDCA prohibited selling and shipping the naltrexone pellets between Hong Kong and the United States.  See 21 U.S.C. § 321(b).

One of defendant's sources of naltrexone pellets was Dr. Lance Gooberman ("Gooberman"), a doctor located in New Jersey, who manufactured naltrexone pellets.  (Plea Agreement ¶ 13; PSR ¶ 20.)  Prior to 2014, defendant entered into an agreement with Gooberman and his office manager and assistant, Susan Tickner ("Tickner").  (Id.)  Pursuant to that arrangement, Gooberman and Tickner would supply

2

naltrexone pellets to defendant, defendant would sell the naltrexone pellets to customers located in the United States, and defendant would pay Gooberman and Tickner a specified amount for all naltrexone pellets received from Gooberman and Tickner that he sold. (Id.) Defendant used United Mailorder Ltd. ("UMO"), a business located in Hong Kong, to store the naltrexone pellets that defendant received from Gooberman and Tickner and to ship the naltrexone pellets to defendant's customers. (Plea Agreement ¶ 13; PSR ¶ 22.)

Between January 2014 and May 2017, Gooberman referred surgery centers and addiction treatment centers located in the United States (collectively, "Customer Clinics" and individually, "Customer Clinic") that were interested in purchasing naltrexone pellets to defendant, and defendant corresponded with those Customer Clinics regarding the purchase and use of naltrexone pellets. (Plea Agreement ¶ 13; PSR ¶ 23.) Once a Customer Clinic placed an order, Moran instructed employees of UMO to ship the order. (Id.) At defendant's direction, employees of UMO would identify the naltrexone pellets as "Plastic Beads in Plastic Tubes" on shipping documents to avoid detection by U.S. authorities. (Plea Agreement ¶ 13; PSR ¶¶ 23-25.)

Between July 2014 and June 2017, defendant received approximately $259,699.60 from four Customer Clinics as payment for naltrexone pellets. (See PSR ¶ 26.)

**III. THE PRESENTENCE REPORT AND THE GOVERNMENT'S OBJECTIONS**

    **A.    Guidelines Calculation**

The government objects to the Probation Office's United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") calculation and recommends that the Court adopt the Guidelines calculations agreed to by the parties in the Plea Agreement.

3

1. The Presentence Report

The Probation Office determined defendant's Guidelines range using U.S.S.G. § 2T3.1: Evading Import Duties or Restrictions (Smuggling).[1] Applying U.S.S.G. § 2T3.1, the Probation Office calculated defendant's total offense level as 12, based on a base offense level of six (U.S.S.G. § 2T3.1(a)(3)), a six-level increase because the offense involved sophisticated means (U.S.S.G. § 2T3.1(b)(1)), a two-level increase because defendant was a leader or organizer (U.S.S.G. § 3B1.1(c)), and a two-level reduction for acceptance of responsibility (U.S.S.G. § 3E1.1). (PSR ¶¶ 33-45.)

The Probation Office calculated defendant's criminal history category as I, based on the conclusion that defendant had no criminal history points. (PSR ¶¶ 50-51.) Based on a total offense level of 12 and criminal history category of I, the Probation Office determined that defendant's Guidelines range was 10 to 16 months of imprisonment. (PSR ¶ 89.)

2. The Government's Objection

In the Plea Agreement, the parties agreed to Guidelines factors by applying U.S.S.G. § 2B1.1. Specifically, the parties agreed to a base offense level of six (U.S.S.G. § 2B1.1(a)(2)), a 12-level increase for gain more than $250,000 (U.S.S.G. § 2B1.1(b)(1)(G),

---

[1] The PSR noted that the guideline for a violation of 18 U.S.C. § 371 is U.S.S.G. § 2X1.1, which states that the base offense level is taken from the guideline for the substantive offense, here, 18 U.S.C. § 545. The Guidelines Statutory Index found in Appendix A provides three guidelines for violations of 18 U.S.C. § 545: U.S.S.G. § 2B1.5 (Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources or Paleontological Resources), U.S.S.G. § 2Q2.1 (Offenses Involving Fish, Wildlife, and Plants), and U.S.S.G. § 2T3.1 (noted above). (See PSR ¶ 33.)

4

commentary note 3(B)), and a two-level increase because defendant was a leader or organizer (U.S.S.G. § 3B1.1(c)). (Plea Agreement ¶ 15.) The government also agreed to recommend a two-level or, if available, three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.[2] Consistent with the Plea Agreement and the facts in this case, the government recommends that the Court apply U.S.S.G. § 2B1.1 to calculate defendant's Guidelines range.

The government acknowledges that U.S.S.G. § 2B1.1 is not listed in the Statutory Index of the Guidelines for a violation of 18 U.S.C. § 545 (i.e., the applicable substantive offense and the object of the charged conspiracy). Notwithstanding, the government submits that applying U.S.S.G. § 2B1.1 is appropriate in this case. More specifically, the government submits that U.S.S.G. § 2N2.1, which applies to violations of statutes and regulations dealing with any food, drug, and other items, and which cross references U.S.S.G. § 2B1.1, is appropriate and reasonable.

A violation of 18 U.S.C. § 545 requires that goods be imported into the United States contrary to law. Here, the naltrexone pellets were imported into the United States in violation of the FDCA, which prohibited the introduction into interstate and foreign commerce of unapproved new drugs. See 21 U.S.C. §§ 331(d), 355(a), 333(a), and 321(b). Because the offense conduct involves violations of statutes dealing with drugs, U.S.S.G. § 2N2.1 (which is the applicable guideline for violations of 21 U.S.C. § 331) is a better fit for the conduct in this case than U.S.S.G. § 2T3.1, which applies to cases

---

[2] Should the Court adopt the parties' agreed upon Guidelines factors, the government moves for a one-level reduction pursuant to U.S.S.G. § 3E1.1(b).

5

involving the evasion of import duties.  At issue in this case was not that defendant wrongfully avoided paying taxes on the naltrexone pellets, but that he wrongfully brought them into the United States in the first place.

Applying U.S.S.G. § 2N2.1, with the cross reference to U.S.S.G. § 2B1.1, results in a total offense level of 17 after the three-level reduction for acceptance of responsibility.  The government does not disagree with the Probation Office's determination that defendant is in criminal history category I.  Accordingly, the government believes the appropriate Guidelines range should be 24 to 30 months of imprisonment.

**B.   Fine**

The PSR reflects a statutory maximum fine of up to $250,000, and a Guidelines fine range of $5,500 to $55,000.  (PSR ¶¶ 96, 98.)  The PSR indicates that defendant does not have the ability to make an immediate fine payment.  (PSR ¶ 85.)   The government does not dispute the Probation Office's findings regarding the allowable fine in this case or defendant's financial condition.

However, the government notes that, in the Plea Agreement, defendant agreed that the appropriate fine in this case is $60,000, and defendant agreed to recommend that the Court impose such a fine. (Plea Agreement ¶¶ 2(h), 16.)  Defendant further agreed to pay $6,000 within seven days of the sentencing hearing and the remaining $54,000 during the period of probation or supervised release.  (Plea Agreement ¶ 16.)

Counsel for defendant has previously indicated to the government that defendant was attempting to sell a boat, which was expected to

generate revenue that defendant may be able to use to pay any fine imposed.

### C. Factual Corrections

Paragraph 17 of the PSR states that defendant owned and operated, among other business entities, "12121 Ltd." The government understands that the name of defendant's business was 1212 Ltd.

Paragraph 18 refers to "DPI," which was likely intended to refer to "API."

Paragraphs 24 and 25 refer to "C3," which was likely intended to refer to "UMO."

## IV. GOVERNMENT'S POSITION REGARDING DEFENDANT'S COOPERATION

In the Plea Agreement, the government agreed that, if the government determined that defendant had complied with his obligations under the Plea Agreement and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), the government would move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding Guidelines range below that otherwise dictated by the Guidelines and to recommend a term of imprisonment within the reduced range. (Plea Agreement ¶ 6(d). Although the government does not move for a reduced Guidelines range pursuant to U.S.S.G. § 5K1.1 for the reasons described below, the government brings to the Court's attention those actions undertaken by defendant in an effort to provide substantial assistance the government.

Defendant met with the government to provide information about his role in the offense and others involved on at least five

occasions.[3] In addition, defendant corresponded with the case agent on various occasions to provide information regarding customer orders for naltrexone pellets. Defendant sent emails at the case agent's direction to individuals who had previously purchased naltrexone pellets. Defendant engaged in two undercover sales of naltrexone pellets to a Customer Clinic in the United States, at the direction of law enforcement. Although defendant remitted the proceeds he received from one of the undercover transactions, defendant failed to turn over $24,745.07 that he received from the another undercover transaction, as he was required to do. Defendant also participated in at least three recorded telephone calls with individuals related to naltrexone pellets at the direction of law enforcement. Finally, defendant testified as a witness called by the government over the course of two days at trial in United States v. Lance L. Gooberman, CR 20-125-JFW.

Notwithstanding defendant's cooperation activities, the government does not recommend a reduced Guidelines range pursuant to U.S.S.G § 5K1.1 for two primary reasons: (1) defendant failed to comply with the express instructions of law enforcement while acting in an undercover capacity (i.e., to remit the proceeds of the undercover sale of naltrexone pellets), which resulted in defendant profiting from activity that would have otherwise been illegal; and (2) defendant testified untruthfully at trial when stated that he had a conversation with the government in which the government indicated that defendant's daughter would not be interviewed if he cooperated.

---

[3] Two of defendant's meetings with the government took place prior to entering into the Plea Agreement.

8

**V. THE GOVERNMENT'S RECOMMENDATION**

For the reasons set forth below, the government respectfully recommends that the Court impose the following sentence: (a) 24-month term of imprisonment; (b) a two-year term of supervised release;[4] and (c) a special assessment of $100.

**A. Analysis Under the Sentencing Guidelines**

As discussed above, and based on the parties' agreements in the Plea Agreement, the government submits that defendant's total offense level is 17. With a criminal history category of I, this results in a Guidelines range of 24 to 30 months. For the reasons discussed below, the government believes that a sentence at the low end of the Guidelines range is reasonable and appropriate given defendant's history and characteristics.

**B. Analysis Under 18 U.S.C. § 3553(a)**

The sentence recommended by the government is reasonable within the meaning of Title 18, United States Code, Section 3553(a). United States v. Booker requires the Court to consider the factors identified in Section 3553(a) when imposing sentence. 543 U.S. 220 (2005). Among the factors to be considered are the nature and circumstances of the offense; the history and characteristics of the defendant; and the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct, and protect the public from further crimes. 18 U.S.C. § 3553(a).

---

[4] The government respectfully requests that the Court adopt any terms and conditions of supervised release recommended by the Probation Office.

           1. **The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Provide General Deterrence Warrant a 24-month Term of Imprisonment**

Sections 3553(a)(2)(A) and (2)(B) require the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence.

Conspiring to import unapproved new drugs, in violation of the FDCA, constitutes a serious offense. Pursuing FDA-approval of a new drug application is a rigorous process designed to ensure the safety and efficacy of drugs distributed in the marketplace. The process provides some comfort to patients who receive the new drugs, knowing that the drugs have been diligently studied and their results closely examined. Drugs that have not been subject to the required testing and analysis of the new drug application process and that do not meet strict labeling requirements do not have the same safeguards that they can and will be safely and effectively used.

Defendant understood that the naltrexone pellets could not lawfully be imported into the United States and that if they were detected by United States authorities, they would be seized. In order to avoid detection and to ensure that defendant's business with United States customers remained intact, defendant instructed his co-conspirators to use product descriptions that did not identify the naltrexone pellets as drugs or medications.

Defendant's conduct enabled hundreds of naltrexone pellets to be imported into the United States for use in addiction clinics and medical practices. Consequently, numerous individuals received drugs without the imprimatur of the FDA's new drug application process.

Moreover, those individuals may have never known that fact. In addition, because the naltrexone products the defendant imported into the United States did not reflect the manufacturers of the drug products, defendant's customers – or patients of customers – with concerns about the naltrexone products would have no way to address those concerns with the manufacturers.

In light of the foregoing, the government submits that a 24 months of imprisonment is necessary and sufficient to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for defendant's offense, and to provide general deterrence.

        2.   <u>The History and Characteristics of Defendant and the Need to Protect the Public from Further Crimes Warrant a 24-month Term of Imprisonment</u>

Section 3553 requires the Court to consider the history and characteristics of the defendant and the need to protect the public from further crimes by defendant in imposing sentence. 18 U.S.C. §§ 3553(a)(1), (2)(C).

When defendant agreed to cooperate with the government's investigation, the government trusted that defendant would honor the commitments and agreements that he made. Although defendant conducted several cooperation activities, as discussed above, defendant did not follow the express instructions of law enforcement authorities when acting in an undercover capacity and did not testify truthfully at trial. Defendant's failure to live up to his promises compromised the government's investigation and pursuit of justice.

On the other hand, the government is not aware of any prior criminal history for defendant. In addition, defendant is 70 years old and has indicated that he does not ship naltrexone pellets into

the United States.  Considering the facts in this case and the history and characteristics of defendant, the government believes that a 24-month term of imprisonment is sufficient to protect the public from further crimes by defendant.

**VI. CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence defendant to a 24-month term of imprisonment, and a two-year term of supervised release.